[No. 27.   Third Appellate District.—July 25, 1905.]

## H. W. OGLE, and C. F. HUBBEL, Appellants, v. JOHN HUBBEL, Respondent.

UNLAWFUL DETAINER—LEASE WITH PRIVILEGE OF PURCHASE—EQUITABLE DEFENSE—FRAUDULENT CONVEYANCE BY LESSOR.—A lease making the lessee a preferred purchaser in case of sale contemplates a *bona fide* sale, and not a fraudulent one; and in an action for unlawful detainer brought by grantees of the lessor the defendant may set up as an equitable defense that the sale to such grantees was collusive and fraudulent for a fictitious price, with the intent to deprive the defendant of his rights under the lease and to oust him from the premises, after the lessor had refused his request to place a cash price thereupon so that he could purchase the same, which he was able and willing to do.

ID.—RIGHT TO AFFIRMATIVE RELIEF NOT ESSENTIAL.—It is not essential to the equitable defense that the defendant should show any right to affirmative relief, or that the contract in the lease should be an enforceable contract for the sale of land.

ID.—ATTORNMENT TO FRAUDULENT GRANTEES NOT REQUIRED—REFUSAL TO PAY RENT—FINDINGS.—The lessee having been deprived by a pretended sale of the important privilege to purchase the land, which the lease gave him, he could not attorn to the fraudulent grantees without recognizing the validity of their purchase and their right to terminate the lease and deprive him of the balance of his term; and where the court found upon sufficient evidence that the deed was made for the fraudulent purpose shown, it was not necessary to find that defendant has refused to pay the rent to the plaintiffs.

ID.—EVIDENCE—ABILITY AND WILLINGNESS TO PURCHASE—OFFER TO PAY RENT TO LESSOR—FINANCIAL CONDITION OF GRANTEES.—Under the issues it was competent for defendant to show ability and willing-

ness to purchase the property at its fair market value. Evidence that he offered to pay the rent to the lessor, who is not a party, and that the lessor refused to accept it was not prejudicial. It was permissible to prove the financial condition of one of the grantees as bearing upon the issues, and to contradict his testimony.

APPEAL from a judgment of the Superior Court of Stanislaus County and from an order denying a new trial. William O. Minor, Judge.

The facts are stated in the opinion of the court.

Nicol & Orr, and Dennett & Walthall, for Appellants.

P. H. Griffin, for Respondent.

CHIPMAN, P. J.—Unlawful detainer. One Barbara Hubbel, mother of C. F. Hubbel, was the owner of the demised premises, and on October 18, 1899, leased the same to the defendant. The lease was for five years, with right of renewal for five years, the term to commence on the day of its execution; the rental being twenty-five dollars per month, payable monthly in advance on the first day of each month. It was further provided that the lessor "may sell said premises during the continuance of this lease either subject to the terms hereof or that such sale may terminate and determine this lease within one year after notice of said sale, but it is understood that said party of the second part [lessee] may always have the preference as purchaser in case of sale."

Defendant entered under the lease and paid rent agreeably thereto until and including the month of April, 1902. On April 29, 1902, Barbara Hubbel executed a conveyance of the premises to plaintiffs by bargain and sale deed, which was duly recorded April 30, 1902, and on that day they served written notice on defendant that they had purchased the premises, and that they "wish to obtain possession of said premises as soon as they can be vacated by you." On May 22, 1902, plaintiffs served upon defendant written notice requiring him to pay rent to them, being twenty-five dollars for the month of May, 1902, "or deliver to us the possession of all of said premises in three days from the time of service upon you of this notice." Defendant failing to pay rent, plaintiffs filed their verified complaint June 13, 1902, alleg-

ing, among other things, that they had purchased the property and were now the owners thereof. Defendant answered, admitting the execution of the lease and his possession under it; he also admitted the execution of an instrument by said Barbara Hubbel purporting to convey said premises, but alleged "that said purported deed was made to defraud defendant of his legal rights under and by virtue of said written lease, . . . and denies that the plaintiffs are the owners of the lots described in the complaint"; denies that he has refused or neglected to pay the rent required by said lease, and alleges that he has offered to pay the rent to his lessor, Barbara Hubbel, and to plaintiffs, but that plaintiffs have refused such payment, and also alleges willingness and ability "to pay said rent to the persons whom the court may determine to be the proper persons to receive said rent, and herewith the filing of this answer deposits the money in court."

By way of an equitable defense to said action and as a cross-complaint defendant alleges the execution of the lease and his performance of all the conditions thereof on his part to be performed; that his lessor, "in order to oust defendant from said premises, fraudulently, and without consideration, transferred said property to . . . plaintiffs herein, on or about the 29th day of April, 1902"; that plaintiffs took said deed with full knowledge of defendant's rights under said lease and his right to purchase said property, and well knew that said deed was made "to oust defendant from said premises"; that defendant "has always been able, willing, and anxious to buy said property from said Barbara Hubbel. . . . That she has refused to place a cash price upon said premises so that defendant could purchase the same and she still refuses and neglects to do the same."

There was no demurrer to the answer or cross-complaint, and the trial proceeded, the court sitting as a jury.

The court found that the lease was executed as above stated; that defendant entered into possession and has ever since been in possession under it; that he has never refused to pay rent to said Barbara Hubbel; that she refused to accept rent after April 29, 1902; and that ever since that time defendant has been able, ready, and willing to pay said rent to said Barbara Hubbel, "and has proffered the same to her, but she has refused to accept the same or any part thereof"; that on April

29, 1902, she, "by an instrument in writing, conveyed said premises to plaintiffs herein"; that prior thereto she had notified defendant "that she intended to sell the same and the terms of such sale," but refused to place a cash value upon the property upon defendant's request, and so notified him. "That said Barbara Hubbel, for the purpose of ousting defendant from said premises and to avoid the terms of said lease, conveyed said premises to plaintiffs; that plaintiffs at the time of said sale were in collusion with said Barbara Hubbel to defraud defendant of all rights under said lease and to oust defendant from said premises, and to terminate said lease"; that defendant has performed all the conditions of said lease by him to be performed, and he always has been willing and able to buy said property, but said Barbara Hubbel refused to place a price upon the same; and that when plaintiffs received said deed "they had actual notice of defendant's equity and interest in the land"; that plaintiffs have not been damaged.

As conclusions of law the court found that plaintiffs are not the owners of the demised premises; that they are not entitled to rents; that defendant is rightfully in possession; that he has not broken the terms of the lease; and that neither of plaintiffs has any right, title, or interest in the premises.

Judgment passed against plaintiffs, and each of them, "that all adverse claims of the plaintiffs and each of them to said premises or any part thereof are invalid and groundless; that defendant be and he is hereby declared and adjudged to be entitled to the lawful and peaceful possession of said premises and every part thereof." From this judgment and the order denying plaintiffs' motion for a new trial they appeal.

Plaintiffs claim that their title was not an issue and could not be tried in this form of action and that the evidence is insufficient to justify the decision, for the reason that there is no evidence that defendant either paid or offered to pay any rent to plaintiffs after April 29, 1902, the date of their alleged purchase of the premises. Defendant does not deny that he paid no rent to plaintiffs; he not only refused to attorn to plaintiffs, but denied their right to demand or receive rent, and denied their alleged ownership of the premises demised. His contention was and is, that the conveyance to plaintiffs by his lessor was fictitious and fraudulent, and there-

fore void, and was made for the express purpose of depriving
him of his lease and of his right to purchase the property.
The court found for the defendant upon these issues, and if
defendant had the right in this action to make this defense,
and did in fact support it by sufficient evidence, it was not
essential to defendan's recovery that he should show an
offer to pay or a payment of rent to plaintiffs. The correct-
ness of the decision rests mainly upon the right solution of
the question thus raised. We think that the decisions of the
supreme court of this state show that the rule contended for
by appellants is not applicable where fraud is shown to have
entered into the procurement of the lease, but that under such
circumstances the tenant may dispute the title of his land-
lord.

In *Mason* v. *Wolf*, 40 Cal. 246, it was said that "the conse-
quences of entering into the contract can only be avoided by
showing some fraud or mistake which would have been suffi-
cient to set aside the lease itself." In *Johnson* v. *Chely*, 43
Cal. 299, the action was unlawful detainer under the act of
1862 (Stats. 1862, p. 652) to recover premises from a tenant
holding over after demand of rent due, and failure to pay
for the space of three days. Defendant, among other defenses.
alleged that the lease sued upon was procured through fraud.
The trial court refused to permit defendant to prove that he
was already in possession of the premises when he agreed to
become the tenant of the plaintiffs, and that they induced him
to assume the relation of tenant to them by their fraudulent
misrepresentations that they were the owners of the premises.
After showing that in ejectment the defendant is permitted
to show fraud, and is not estopped to dispute his landlord's
title where he did not enter under the lease, and that the
landlord cannot throw him out by mere force of such a lease,
the court said: "That the same result must follow so far as
the defendant is concerned in an action of unlawful detainer
in which a lease relied upon to establish the relation of land-
lord and tenant is shown to have been obtained under such cir-
cumstances as would not have estopped the tenant from dis-
puting the title of the landlord in a court in which the title
could be tried."

In *Knowles* v. *Murphy*, 107 Cal. 107, [40 Pac. 111], one of
the issues presented by the defendants was, that they were

induced to enter into the lease by reason of certain false and fraudulent representations. This defense seems to have been recognized as properly made, and failed only because of insufficient evidence to support it. In the case of *Davis* v. *Schweikert*, 130 Cal. 143, [62 Pac. 411], the lease provided that the lessee would surrender possession "in case the said party of the first part should sell the property herein described at any time during the term of the lease." The tenant's lessor made a conveyance of the premises to defendant, who represented to plaintiff (the tenant) that she had purchased and paid for the property, and, relying on the truthfulness of these representations, plaintiff surrendered possession. He afterwards learned that the sale was fictitious and fraudulent and made for the purpose of regaining possession from him. He brought the action for damages and recovered. The court, in affirming the judgment, said: "The lease conveyed to plaintiff the premises for the term of five years, subject to the condition expressly written in the lease that it should terminate upon the property being sold by the lessor. The covenant must be understood as meaning an actual *bona fide* sale and not a fraudulent one. It was not contemplated—or, at least, the law does not contemplate—that the lessor could by a pretended fraudulent sale, made for the very purpose of defeating his lessee of his estate, avoid the lease and then take advantage of his own wrong."

We cannot doubt that had the action been unlawful detainer to dispossess the tenant under pretense of sale he could have successfully defeated it by showing the sale to have been fraudulent and for the purpose of ousting him.

In the case of *Simon Newman Co.* v. *Lassing,* 141 Cal. 174, [74 Pac. 761], the action was unlawful detainer. Defendant conveyed the property to plaintiffs and subsequently gave plaintiffs a note for $936, in consideration of which plaintiff agreed that defendant might remain in possession one year. To plaintiff's complaint defendant answered that the deed was executed and the agreement for possession was made through the false and fraudulent representations of plaintiff. At the trial defendant had the verdict, and the trial court, on plaintiff's motion, granted a new trial. In the course of the opinion on appeal, the court said: "Respondent contends, as we understand the brief of counsel, that defendant is estopped

to deny his landlord's title, under the general rule that a lessee cannot, in an action involving possession or right of possession, question the title of his landlord; that defendant must first go into the equity court and have the deed set aside if made through fraud or undue influence. While desiring to avoid the discussion of questions that may not hereafter arise, it is proper, perhaps, to say that, in our opinion, the defendant may show, as part of the transaction leading up to the lease, and as evidence bearing upon the question of fraud and undue influence in the execution of the lease, that the deed as well as the lease was so executed, and to show the relation of each to the other as one transaction. Defendant is not seeking rescission, nor is he asking to have the deed set aside as void; he is simply defending against plaintiff's action on the ground of fraud and undue influence, and asks no affirmative relief. We think he may do this without rescinding. (Citing cases.) The answer is intended to set forth what in *Toby* v. *Oregon R. R. Co.*, 98 Cal. 490, [33 Pac. 550], is termed 'defensive relief, whereby fraud is set up by way of defense to defeat an action brought to enforce an apparent liability.' "

In the case now here, the lease was not originally procured by fraud, but the effect of the findings is, that plaintiffs now hold it in defraud of defendant's rights, through the acts of defendant's lessor and her grantees, and that they are seeking to enforce it to his detriment.

So far as plaintiffs are concerned, the lease in their hands is found to be tainted with fraud, because the deed, by force of which alone the plaintiffs claim under the lease, was fraudulent and void. That evidence was admissible to establish the facts found we entertain no doubt, in view of the principles enunciated in the foregoing cases. The remaining question then is, Was the evidence sufficient to justify the findings?

Mrs. Hubbel, on February 14, 1902, wrote defendant informing him that she had an opportunity to sell the premises for nineteen hundred dollars cash and forty-five hundred dollars payable in four years, with interest at eight per cent, compounded yearly, and secured by mortgage on the land, and unless she received from him the above or a better offer before March 1, 1902, she would accept the offer above mentioned and sell the property upon the said terms. On Febru-

ary 26, 1902, defendant replied: ''I have reason to know that said pretended sale is for the sole purpose of ousting me from said property.'' He stated further: ''If you intend to make a *bona fide* sale of the leased premises, kindly state the amount you will take in cash upon the delivery of the deed to me''; and he also added: ''By the terms and agreements and covenants of your lease to me, a cash and real value must be placed upon the premises and *bona fide* purchaser.'' To this letter Mrs. Hubbel replied March 3, 1902, informing defendant that he was not entitled to any better or different terms than those upon which she could dispose of the property to other parties, and added: ''Of course I understand from your letter that you are not desiring to purchase the property in good faith, and so it will receive no further attention from me and I will proceed to complete the sale already agreed upon.''

Without further notice to defendant, she executed the deed to plaintiffs above mentioned. Plaintiff Ogle testified that for his half-interest he paid one thousand dollars in cash and delivered his note secured by mortgage on the premises for $2,250, payable four years after date, at eight per cent interest. Plaintiff Hubbel testified that he gave his note to Mrs. Hubbel for $2,250, payable one year after date, at eight per cent interest, without security. He testified that at various times in previous years he had deposited with his mother four hundred dollars, which she allowed as a payment on the purchase, and that she made him a present of five hundred dollars, and that he had paid about one hundred dollars on the note since the transaction. These items aggregate sixty-five hundred dollars. The undisputed evidence was, that the market value of the premises was not to exceed three thousand dollars, some witnesses placing it at twenty-five hundred dollars; that defendant was able and willing to purchase the property at its reasonable or market value; that plaintiff Hubbel was without means, and that his expectations to meet his note were that he would earn the money or obtain renewal of the note. Mrs. Hubbel did not testify, and the court had only the testimony of plaintiff Hubbel as to what he paid for his interest in the property. Some facts were brought out from which the court was no doubt led to discredit the testimony of plaintiff Hubbel, and which tended to show that the sale, if meant to be binding at all, was for about half the

amount Mrs. Hubbel informed defendant she was offered for
it. The trial court had the witnesses before it, and with its
discretion in accepting or rejecting the statements of wit-
nesses under the circumstances disclosed we cannot interfere.
There was sufficient evidence to support the findings of the
court as to the fictitious character of the transaction.

The contention of appellants that Mrs. Hubbel had the
right to give away a half-interest in the property to her son,
if she wished to do so, is not consistent with respondent's
rights under the lease. The lease contemplated a *bona fide*
sale before defendant could be deprived of his rights under
the lease. It may be that the lessor had the right to make a
sale to some one willing to give more than the market value,
and that defendant would be obliged to pay this sum if he
wished to purchase, but in any event the sale would have to
be "an actual *bona fide* sale and not a fraudulent one."
(*Davis* v. *Schweigert,* 130 Cal. 143, [62 Pac. 411].) It may
also be that the lessor had the right to convey the property
by gift to her son, but such a conveyance would not have ter-
minated the lease or have affected defendant's rights under
it; he would still have the right of purchase in case of a sale
during the life of the lease.

But the court found that the conveyance here was a fraud-
ulent one, and in effect found that the consideration to be
paid by plaintiff Hubbel was pretended and fictitious, and
was designed to so increase the price to defendant that he
would not buy, while Mrs. Hubbel was at the same time re-
ceiving all the property was worth in the market. The un-
disputed fact, on plaintiff's own showing, was that she did
not dispose of the property upon the terms she wrote defend-
ant she was offered for it.

Plaintiffs contend that defendant's rights were not preju-
diced by the conveyance, because he had the same remedies
against them, as grantees, as he had against his lessor. This
might be true had defendant declined to purchase after no-
tice of a *bona fide* offer of purchase by some other person.
But he was deprived by this pretended sale of the impor-
tant privilege to purchase which the lease gave him. He could
not attorn to plaintiffs without recognizing the validity of
their purchase and their right to terminate the lease and de-
prive him of the balance of his term.

Appellants further contend that the provisions of the lease were not such as to constitute a valid or enforceable contract for the sale of the leased land, because they were indefinite, uncertain, and incomplete. Under the terms of the lease, defendant could not compel his lessor to sell to him at any price.

But this is not an action to specifically enforce the contract; defendant does not seek affirmative relief; he seeks merely to prevent the perpetration of a fraud upon his rights. (*Simon Newman Co.* v. *Lassing,* 141 Cal. 174, [74 Pac. 761].)

If, as was found by the court, the deed was made for the fraudulent purpose shown, the court was justified in finding that plaintiffs were not damaged. It was not necessary for the court to find that defendant refused to pay rent to plaintiffs, in view of its findings as to the fraudulent nature of the transaction. Nor do we think the findings contradictory, in that the court found that the property was conveyed to plaintiffs by Mrs. Hubbel, and elsewhere that plaintiffs had no title. The findings plainly show that the court did not regard the conveyance as valid, though in fact executed.

Under the issues, it was competent for defendant to show ability and willingness to purchase the property at its fair market value. He was not bound to pay her a sum fictitiously or fraudulently named to him as offered by another person. It was not prejudicial error for defendant to show that he had offered to pay rent to his lessor and that she had refused to accept it. Under the circumstances of the case, and his lessor not being a party, it was perhaps unnecessary for him to show an offer to pay his lessor. If plaintiffs had shown themselves to have been *bona fide* owners of the property, an offer to pay rent to their grantor would have been no defense. This, however, was not the case, and the evidence was harmless. It was not error to allow proof of plaintiff Hubbel's financial condition as bearing upon the issues presented and as tending to contradict his testimony.

The judgment and order are affirmed.

McLaughlin, J., and Buckles, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 22, 1905, and a petition to

have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 23, 1905.